**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LORI STRAUB,**

**Plaintiff,**

**vs.**

**Case No. 2:10-cv-620**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Terence P. Kemp**

**CITIFINANCIAL AUTO CREDIT, INC.,**

**Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss or Stay Pending Arbitration (Doc. 8.) For the reasons set forth herein, the motion is **GRANTED** and the Court will **DISMISS** this matter.

**I.**

This action arises from Plaintiff Lori Straub ("Straub")'s March 2007 purchase of a used Jeep Liberty in St. Clairsville, Ohio—a purchase that was financed by Defendant Citifinancial Auto Credit ("Citi"). (Compl. ¶ 3.) In December 2008, Straub contacted Citi about the possibility of modifying the monthly payments on her loan. (*See* Compl. ¶ 5.) According to Straub, Citi offered her a relief package that allowed her to avoid payments for two months and then lowered the monthly payment from approximately $380 to $242. (Compl. ¶ 6.) Straub claims that she signed an amended loan agreement ("Amendment") memorializing the relief package in January 2009 and then faxed the signed agreement to Citi. (Compl. ¶ 7.) However, in June 2009, Citi repossessed the

automobile. (Compl. ¶ 14.)

Straub initially filed this action in the Court of Common Pleas of Belmont County, bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, intentional infliction of emotional distress, and trespass and conversion. The case was subsequently removed to this Court by Citi pursuant to 28 U.S.C. §§ 1441 & 1446. (Doc. 2.) Citi now moves to dismiss or stay this action pending arbitration.

**II.**

The Federal Arbitration Act ("Act") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that [courts] rigorously enforce agreements to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The Act provides federal courts with the authority to stay lawsuits in cases where issues are referable to arbitration pursuant to written agreements calling for such arbitration, and to compel arbitration where a party to a dispute has refused to arbitrate the dispute as required by an enforceable agreement. *See* 9 U.S.C. §§ 3–4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

III.

Both the Amendment and the original loan agreement signed by Straub ("Original Agreement") have provisions calling for arbitration of certain disputes arising from them. However, the arbitration clauses in the respective agreements are not identical, and the Parties disagree as to which clause controls. Of relevance to the present controversy, the Original Agreement provides as follows:

> 20. ARBITRATION. The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.
>
> > 1 If either you or we choose, any dispute between you and us will be decided by arbitration and not in court. . . .
>
> Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, arbitration section or the arbitrability of any issue), between you and us or any of our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, which arises out of or relates to a credit application, this contract, or any resulting transaction or relationship arising out of the contract shall, at the election of either you or us, or our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor . . . or the applicable rules of the National Arbitration Forum, or its successor. . . .
>
> Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. . . .
>
> Notwithstanding this provision, both you and Creditor and Creditor's employees, parents, subsidiaries, affiliate companies, agents, successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

(Whitehead Aff. Ex. A, ¶ 20.) The Amendment contains the following arbitration provision:

> THIS ARBITRATION PROVISION SIGNIFICANTLY AFFECTS YOUR RIGHTS IN ANY CLAIM OR DISPUTE WITH US. PLEASE READ THIS ARBITRATION PROVISION CAREFULLY BEFORE YOU SIGN THIS AGREEMENT.
>
> EITHER BORROWER(S) OR COMPANY MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US, EXCEPT AS PROVIDED BELOW, DECIDED BY ARBITRATION. IF ARBITRATION IS CHOSEN, YOU AND WE WILL EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT AND/OR A JURY TRIAL. IF ARBITRATION IS CHOSEN, YOU MAY NOT SERVE AS A CLASS REPRESENTATIVE OR PARTICIPATE AS A CLASS MEMBER IN ANY CLASS ACTION AGAINST ANY PARTY ENTITLED TO COMPEL ARBITRATION UNDER THIS PROVISION.
>
> Any claim or dispute, except as provided below, whether in contract, tort or otherwise (including, without limitation, interpretation and the scope of this provision, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this contract or note) between you and us or our employees, agents, successors or assigns which arise out of or relate to this contract or note or any resulting transaction or relationship including any such relationship with third parties who do not sign this contract or note shall, at your or our election (or the election of any such third party) be resolved by neutral, binding arbitration and not by court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action, and you expressly waive any rights you may have to arbitrate a class action. The Federal Arbitration Act governs this Arbitration Provision.
>
> Notwithstanding this Arbitration Provision, you and we can not require the other to arbitrate the following matters: (1) our respective rights, if any, to exercise self-help remedies; (2) seeking provisional remedies to enforce our security interest from a court; (3) any action brought in small claims court which remains in such court and asserts claims on an individual basis seeking $15,000 or less; and/or (4) any action where all parties collectively, including multiple named parties, seek monetary relief in the aggregate of $15,000 or less in total relief including but not limited to compensatory, statutory or punitive damages, costs and attorney fees. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.
>
> The party initiating arbitration must choose one of the following organizations and follow its rules for initiating and pursuing arbitration:

American Arbitration Association . . .

National Arbitration Forum . . . .

(Doc. 15, Ex. 1 at 2.)

Straub contends that the arbitration provision of the Amendment, which she claims controls, is defective on several grounds, including that both the American Arbitration Association ("AAA") and the National Arbitration Forum ("NAF") are unavailable to arbitrate the dispute. Citi responds by claiming that the arbitration provision of the Original Agreement controls, and is valid and enforceable. As explained *infra*, because the Court concludes that the unavailability of the AAA cannot be determined from the record presently before it, the Court will refrain from deciding which agreement controls and will compel arbitration in this case before the AAA.

**A.**

Straub asserts that both the NAF and the AAA are unavailable to arbitrate this dispute. In support of this contention, she has submitted a press release from the Minnesota Attorney General indicating that the NAF has agreed to no longer arbitrate consumer disputes and a press release from the AAA announcing a moratorium on arbitrating certain types of consumer debt disputes. (*See* Doc. 15, Exs. 2 & 4.) Thus, according to Straub, in light of the unavailability of the arbitrators required to arbitrate the dispute by the terms of the Amendment, that agreement's arbitration provisions are rendered unenforceable. Citi, on the other hand, contending that the Original Agreement is controlling, claims that that agreement's arbitration provisions do not mandate arbitration by either the NAF or the AAA, but allow the Parties to choose an alternate set of rules and/or arbitration forum.

Citi also points to 9 U.S.C. § 5 which allows a district court to appoint an arbitrator should the parties chosen arbitrator be unavailable. Citi claims that even if both the NAF or the AAA are unavailable and its agreement could be read to mandate arbitration before one or the other, the Court should exercise its authority pursuant to § 5 and appoint an arbitrator. However, the Court is precluded from appointing a new arbitrator if the Parties' choice of an arbitrator "is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (internal quotations omitted). This rule reflects the federal policy of favoring arbitration, but also of adhering to the contractual terms to which parties have agreed. For instance, if the parties' choice of arbitrator is integral to the agreement, they should not be compelled to arbitrate before another forum.

The Amendment unambiguously requires arbitration before either the AAA or NAF, providing that "[the party initiating arbitration must choose one of the following organizations and follow its rules for initiating and pursuing arbitration." (Doc. 15, Ex. 1 at 2.). Thus, assuming the Amendment were to control, the unavailability of both fora would require an inquiry into whether the exclusive choice of these fora is an integral part of the Amendment. Turning to the Original Agreement, Citi asserts that it should be interpreted as allowing the Parties to choose any rules of arbitration to govern the dispute. Citi emphasizes the word "may" in the following language as supporting this interpretation: "[w]hoever first demands arbitration may choose to proceed under the applicable rules of the [AAA}, or its successor . . . or the applicable rules of the [NAF], or its successor." (Whitehead Aff. Ex. A, ¶ 20.)

The Court also notes that the Original Agreement is ambiguous as to whether the required arbitration must actually be performed by the AAA or NAF or merely be subject to their rules. In

a slightly different context, in *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir. 1989), the Sixth Circuit treated a similar provision mentioning only the constitution and the rules of the Board of Governors of the New York Stock Exchange as requiring the parties to submit their dispute to the New York Stock Exchange for Arbitration. *See id.* at 1219–21. The Court, however, need not decide today whether the arbitration clause of the Original Agreement allows the use of arbitrators other than the AAA or NAF, or, if not, whether the choice of those fora is integral to that agreement. From the record presently before it, the Court is unable to conclusively determine whether the AAA is unavailable to arbitrate the instant dispute, and, as use of the AAA as arbitrator is squarely within the terms of both the Original Agreement and the Amendment, and as the Court concludes that Straub's efforts to invalidate the Amendment on other grounds should fail, the Court requires Straub to submit her claims to the AAA and dismisses this action.

The press release from the AAA's website submitted by Straub is dated July 27, 2009 and states that "The [AAA] today announced its decision not to accept new consumer debt collection arbitration cases effective immediately." (Doc. 15, Ex. 4 at 1.) The release provides rather specific criteria as to what types of cases are covered by the moratorium. These include: "Individual case filings in which . . . [t]he company is the filing party and . . . [t]he consumer has not agreed to arbitrate at the time of the dispute." (Doc. 15, Ex. 4 at 1.) The release further states that "[t]he AAA will continue to administer all demands for arbitration filed by consumers against businesses." (Doc. 15, Ex. 4 at 1.) From this language, it is far from clear whether the AAA would arbitrate Straub's claims. The Court cannot conclude from the record in this case that the AAA will not provide arbitration services.

B.

Straub asserts that her claims are not covered by the terms of the Arbitration provision of the Amendment because they arise from Citi's right "to exercise self-help remedies," a type of dispute that the parties are not required to arbitrate. (Doc. 15, Ex. 1 at 2.) Even assuming the applicability of the Amendment, Straub's argument is without merit. Parties are permitted to agree that the arbitration process itself may be used to determine whether specific issues are within the scope of the arbitration provisions of their agreements. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). The arbitration provision of the Amendment includes within its scope "the arbitrability of any issue." (Doc. 15, Ex. 1 at 2.) Thus, the Amendment calls for the Parties to submit the question as to whether the claims raised by Straub are covered by the arbitration provision to the arbitrator.

C.

Finally, Straub asserts that the arbitration provision of the Amendment is unenforceable because it lacks mutuality of obligation. "[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The enforceability of an arbitration agreement must be reviewed under the law of the state of contract formation. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). "The concept of mutuality of obligation requires that both parties to a contract be bound by its terms." *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834 (S.D. Ohio 2007) (citing *Raasch v.*

*NCR Corp.*, 254 F. Supp. 2d 847, 855 (S.D. Ohio 2003)); *see also Helle v. Landmark, Inc.*, 472 N.E.2d 765, 776 (Ohio Ct. App. 1984) ("[s]tripped to its essence, the concept of 'mutuality of obligation' expresses the idea that both parties to the contract must be bound or neither is bound" (internal quotations omitted)).

According to Straub, the Amendment's arbitration provision lacks mutuality of obligation because of the many exceptions to the provision's coverage—exceptions that Straub asserts benefit Citi. However, Straub cites no case law wherein an Ohio court has ruled that an agreement lacked mutuality of obligation under circumstances similar to those present in the Amendment. "What mutuality of obligation *does not* mean is that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other." *Raasch*, 254 F. Supp 2d at 856 (emphasis in original). In Raasch, the court went on to state that:

> Raasch contends that because the arbitration provision excepts from its coverage certain disputes, which it contends are typical of the kind which NCR itself would be most likely to initiate, it lacks mutuality, presumably because NCR retains the right to go to court for disputes it is more likely to initiate whereas its employees do not retain that right for disputes they are more likely to initiate. Even if the disputes excepted from [the arbitration provision] would generally be of the type NCR itself would be more likely to initiate, it miscomprehends the mutuality of obligation doctrine to state that this poses a problem. Mutuality requires only that both Raasch and NCR be bound to the terms of any dispute that is required to be submitted to the arbitrator.

*Id.* (footnotes omitted). Accordingly, Straub's argument that the arbitration provision of the Amendment lacks mutuality of obligation is not well taken.

**D.**

The Court does not decide today whether the Original Agreement or the Amendment controls in this dispute. Instead, the Parties shall arbitrate this dispute before the AAA. The case

is dismissed , subject to arbitration. Further, upon motion, either Party may reopen this case in the event the AAA refuses to conduct the arbitration.

IV.

For the reasons stated above, Defendant's Motion to Dismiss or Stay Pending Arbitration (Doc. 8.) is **GRANTED**. This matter is **DISMISSED**. Should the AAA consider Straub's claims to be subject to its moratorium, the Parties shall notify the Court, which will then consider whether an alternative arbitrator should be appointed or whether the arbitration provisions at issue are unenforceable.

**IT IS SO ORDERED.**

2-9-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**